(86 App. Div. 521.)

PEOPLE ex rel. STEERS v. DEPARTMENT OF HEALTH OF THE CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. July 24, 1903.)

1. MUNICIPAL CORPORATIONS—NEW YORK CITY—HEALTH DEPARTMENT—REMOVAL OF EMPLOYES—OPPORTUNITY FOR EXPLANATION.

A salaried food inspector in the department of health of New York City is not within the purview of section 1543 of the charter, which provides that "no regular clerk or head of a bureau shall be removed until he has been allowed an opportunity of making an explanation," not being a regular clerk or head of a bureau. Laws 1897, p. 541, c. 378.

2. SAME—REMOVAL TO MEET REDUCTION IN APPROPRIATIONS.

Laws 1898, p. 447, c. 186, § 13, which provides that a person removed from the civil service shall have an opportunity to make an explanation, only applies where the removal is on account of some personal dereliction, and not where made solely to meet a reduction in appropriations.

3. MANDAMUS—RETURN—DECISION—VARIANCE.

Where the return to an alternative writ of mandamus recited that "there was no money appropriated * * * for the payment of the services of the petitioner, and that at the time of the removal of petitioner there was no money with which to pay for any services that he

might render, and because of such lack of appropriation and lack of money said board * * * dispensed with the services of petitioner," and the decision of the referee was that the head of the department had the right "to dismiss the relator from his employment by reason of the diminished and insufficient salary appropriation for the year," the variance was of words, and not of substance.

4. MUNICIPAL CORPORATIONS—NEW YORK CITY—REMOVAL OF EMPLOYES TO MEET REDUCED APPROPRIATION.

On a reduction by the board of estimate and apportionment of the appropriation for salaries for employés in the health department of the city of New York, the department had the discretion to dismiss certain of the employés, and was not required to scale down salaries in order to retain them.

5. SAME—BAD FAITH.

The mere fact that during the year various persons were appointed to other places in the department, or that there were promotions, and some few increases of salary in other positions, did not indicate bad faith.

6. SAME.

Bad faith was not to be inferred from the fact that the department did not exhaust its entire salary appropriation for the year, but carried over a surplus.

Appeal from Special Term.

Mandamus by the people, on the relation of William H. Steers, against the department of health of the city of New York. From an order dismissing an alternative writ, relator appeals. Affirmed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCH-BERG, and HOOKER, JJ.

George W. McKenzie, for the People.

James McKeon, for respondent.

JENKS, J. The relator appeals from an order of the Special Term confirming the decision of a referee upon the trial of an alternative writ of mandamus dismissing the writ. The relator was a salaried food inspector in the department of health of the city of New York. In 1898 the said department submitted its estimate for the ensuing year to the board of estimate and apportionment. The estimate specified many of its subordinates, including the relator, with their respective salaries. The department asked an appropriation for those salaries of $163,000. The board of estimate and apportionment allowed $137,000 for salaries and $14,000 for medical school inspectors, making a total appropriation for salaries of $151,000. Thereupon, and at the close of 1898, the board of health, for its department, adopted a resolve dispensing with the services of 25 of its subordinates, including the relator, from and after December 31, 1898, "for the reason that the appropriation for salaries for the year 1899 is insufficient." The relator received formal and official notice of such action.

It was the duty of the department to curtail expenses so as to keep them within its appropriation. Section 1542, Greater New York Charter, Laws 1897, p. 541, c. 378. I think that the relator was not entitled to any further opportunity of explanation. He was not a regular clerk or head of a bureau, and therefore was not within the purview of section 1543 of the charter. He was not protected by sec-

tion 13 of chapter 186, p. 447, of the Laws of 1898, because that refers to some personal dereliction, shortcoming, or misconduct (Lethbridge v. City of New York, 133 N. Y. 232, 30 N. E. 975), and there is not the slightest intimation that the relator was dismissed from the department for any fault. It is hard to see how a personal explanation would cure a lack of departmental moneys to pay a salary. Personal explanation would not avail unless the relator could induce the department to dismiss some other person or to rescale salaries for his benefit; and this, of course, is not the purpose of the statute.

The variance between the allegations of the return and the finding of the learned referee is that of words, and not of substance. The return reads:

"That there was no money appropriated by the board of estimate and apportionment of the city of New York for the payment of the services of the petitioner, and that at the time of the removal of the petitioner there was no money with which to pay for any services that he might render, and because of such lack of appropriation and lack of money said board of health dispensed with the services of the petitioner."

The decision is that the head of the department had the right "to dismiss the relator from his employment by reason of the diminished and insufficient salary appropriation for the year 1899." If the salary appropriation was "diminished and insufficient," that was due to the fact that "no money" had been "appropriated" by the board of estimate to pay the salaries of all of its then employés. As to those discharged, then, for lack of departmental funds, there was no money appropriated to continue them in salaried positions. The return and the decision present the same idea, namely, dismissal because the diminished appropriation required it. There is no indication that the reason stated was sham. The board of health placed the relator in its estimate, and asked an appropriation, which included his salary. The board of estimate and apportionment cut down the appropriation. This required a reduction of the salaried force, or a general reduction of salaries. The department was not required to scale down the salaries in order to retain all of its employés. In its discretion in internal administration the board dismissed 25 employés, including the relator. It merely took a necessary step toward economy, required by the action of the appropriation branch of the city government. Further, none has ever been appointed in the relator's stead, and none has ever been appointed to perform the same, like, or similar duties. The mere fact that during the year 1899 various persons were appointed to other places, or that there were promotions, and some few increases of salary, in other positions, does not indicate bad faith. There were but one clerk and one laborer appointed and assigned to the same division to which the relator was appointed. The majority of the other appointees were medical school inspectors, for whose salaries a specific appropriation was made. And there is no proof whatever but that the other appointments were more necessary for the public health than the retention of the relator in his position. Nor is bad faith to be inferred from the fact that the department did not exhaust its entire salary appropriation for the year, but carried over a surplus. If, in good faith, a department initiates

a policy of enforced economy, but goes too far in the sense that at the end of the year it is found that such rigid retrenchment was not necessary, that affords no reason for the reinstatement of a subordinate dismissed at the beginning of the year on account of estimated lack of funds based upon a reduced appropriation. To show that after-events possibly indicated that some of the 25 dismissed employés might have been retained, and among them the relator, is not to show his present right to reinstatement. The order should be affirmed.

Order affirmed, with costs. All concur.